RAFAEL TORRECH RÍOS, demandante y recurrido, *v.* JUAN RAMÓN RAMOS RODRÍGUEZ, LUIS RAMOS RODRÍGUEZ y la SOCIEDAD CIVIL "RAMOS HERMANOS", demandados y recurrente la última.

Número 11782.
*Reasignado:* 8 de junio de 1961. *Resuelto:* 29 de junio de 1961.

*Brown, Newsom & Córdova* e *Iván Díaz de Aldrey,* abogados de la recurrente; *Jorge M. Morales* y *Ramón L. Nevárez,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Concertado un contrato de compraventa entre recurrido y recurrente, se estipuló en el mismo que un crédito hipotecario a favor del Federal Land Bank, que gravaba la finca objeto de la contratación estaba reducido a una suma específica, cantidad que retuvo el comprador Rafael Torrech Ríos del precio convenido para pagarle en su día, haciéndose constar además que si apareciere algún otro gravamen aparte de la hipoteca, la vendedora "se compromete y obliga . . . a cancelar el mismo sin costo alguno para el comprador."

La escritura de compraventa fue otorgada el 24 de marzo de 1953. A esa fecha se adeudaban al Federal Land Bank $1,976 de intereses vencidos sobre el balance del crédito hipotecario asumido por el comprador. Se adeudaba además la cantidad de $1,861.22 de contribuciones territoriales correspondientes al año fiscal 1952–53. Las dos partidas constituían gravámenes sobre la finca. Los intereses vencidos, por estar hipotecariamente garantizados T. de E. pág. 15. Las contribuciones por así establecerlo la ley. 13 L.P.R.A. sec. 361 y sec. 461; 30 L.P.R.A. sec. 292.

El recurrido hizo efectiva las dos partidas e inició pleito contra la vendedora, aquí recurrente, para cobrarlas. La recurrente ofreció prueba oral en el acto del juicio con el propósito de demostrar que las partes habían convenido que el comprador asumiría el pago de las cantidades reclamadas, o sea que se había comprometido a pagar los intereses vencidos sobre la hipoteca y las contribuciones pendientes de pago. El recurrido por sus abogados se opuso a la presenta-

ción de esa evidencia porque "equivaldría a tratar de variar los términos de una escritura". El juez de instancia sostuvo la objeción del demandante y luego de considerar toda la prueba procedió a declarar con lugar la demanda imponiendo las costas y $100 de honorarios de abogado a la parte demandada.

Apelada la sentencia el único error señalado, es el que se alega se cometió al no admitirse prueba oral([1]) para demostrar que el demandante se comprometió a pagar los intereses vencidos y las contribuciones pendientes de pago.

■■■■ Arguye la recurrente que normalmente no es admisible prueba para desvirtuar los términos de un contrato escrito, ([2]) pero apunta que el art. 101, inciso 2 de la Ley de Evidencia, 32 L.P.R.A. sec. 1886, establece una excepción a dicha regla. ([3])

---

([1]) Wigmore sostiene que es inexacto hablar de prueba oral, ya que la regla es que no procede la admisión de evidencia, oral o escrita, para variar lo estipulado en el contrato. IX Wigmore (3ra. ed. 1940) Sec. 2400 (2)). Véase además Rossy v. Tribunal Superior, 80 D.P.R. 729 (1958).

([2]) Dice así el art. 25 de la Ley de Evidencia, 32 L.P.R.A. sec. 1668:

"Cuando las condiciones de un convenio se hayan consignado por las partes en un documento, se considerará que contiene éste todas dichas condiciones, por lo que no cabrá entre las partes y sus representantes o sucesores en interés, evidencia alguna de las condiciones del convenio, fuera de lo contenido en el documento, excepto en los siguientes casos:

"1. Cuando una equivocación o imperfección en el documento fuere alegada en el litigio.

"2. Cuando la validez del convenio constituyere el hecho controvertido.

"Pero esta sección no excluye otra evidencia de circunstancias bajo las cuales fuere hecho el convenio, o con las cuales se relacionare, según lo definido en la sec. 1671 de este título, o para explicar una ambigüedad extrínseca, o probar ilegalidad o fraude. La palabra 'convenio' incluye escrituras y testamentos, así como contratos entre las partes. Código Enj. Civil, 1933, art. 387."

([3]) Dice así el art. 101, inciso 2 de la Ley de Evidencia, 32 L.P.R.A. sec. 1886:

"Las siguientes presunciones se estiman concluyentes, con exclusión de todas las demás:

" *      *      *      *      *      *      *      *      *

"2. La verdad de los hechos relatados, en la relación contenida en un documento escrito, entre las partes interesadas en el mismo o sus sucesores en interés por título adquirido posteriomente pero esta regla no será aplicable a la relación de una compensación."

Mediante estas disposiciones incorporamos a nuestro cuerpo estatu-

Alega la recurrente que el testimonio de los testigos que ofreció y fue rechazado por el juez de instancia, se limitaría a demostrar que las partes convinieron que el comprador asumiría el pago de los intereses vencidos y el de las contribuciones pendientes de pago. Y entiende que esta prueba cae dentro de la excepción que establece el art. 101 de la Ley de Evidencia. (⁴)

El tribunal sentenciador reconoce la regla y su excepción pero agrega que lo "decisivo es si el elemento de la alegada negociación extrínseca está o no cubierto por el contrato" y afirma que estando cubierto el alegado convenio oral por la cláusula de la escritura que obligaba a la vendedora a cancelar cualquier gravamen que apareciere en adición al de la

tario la regla prevaleciente en las jurisdicciones donde impera el derecho común. Está basada en el hecho de que la contratación escrita normalmente es redactada por los propios contratantes, sin la intervención de expertos, como sucede en Puerto Rico cuando se eleva el contrato a escritura pública, por lo que debe concederse oportunidad para explicar la verdadera intención—Browne, *A Treatise on the Admissibility of Parol Evidence*, pág. 2, sec. 2 (L. K. Strouse & Co. 1893). De ahí que no se le considere como regla de evidencia, propiamente dicha. IX Wigmore, (3rd ed 1940 § 2400.)

(⁴) Para sostener su posición la recurrente cita los casos siguientes que si bien es verdad que sostienen la excepción a la regla no son aplicables a la situación de hechos del presente caso. Veamos: *Horton* v. *Robert*, 11 D.P.R. 176 (1906) la prueba era para demostrar cuál fue la verdadera cantidad recibida en un préstamo; *Cabrera* v. *Colonial Bank*, 214 U.S. 224 (1909) para demostrar que no medió causa; *Fernández* v. *González*, 16 D.P.R. 650 (1910) para demostrar cuál fue la verdadera transacción; *Hernández* v. *Fernández*, 17 D.P.R. 112 (1911) para demostrar que no medió precio; *Marxuach* v. *Acosta*, 39 D.P.R. 965 (1929) para demostrar que una venta era en realidad una permuta; *Villanueva* v. *Suárez*, 41 D.P.R. 40 (1930) para demostrar la verdadera causa; *Monge* v. *Rodríguez*, 45 D.P.R. 411 (1933) para demostrar que no se había recibido el precio; *Ruiz* v. *Sociedad Agrícola Mario Mercado e Hijos*, 46 D.P.R. 818 (1933) para demostrar que la verdadera transacción fue vender 100 cuerdas y no 150 como se expresaba en la escritura; *De la Rosa* v. *Sucesión Quevedo*, 47 D.P.R. 175 (1934) para demostrar que no se recibió toda la suma objeto del préstamo y *Ochotecto* v. *Córdova*, 47 D.P.R. 554 (1934) para demostrar que el dinero entregado no fue en calidad de préstamo y sí un depósito. Además de estos casos citados por la recurrente hay otros de este Tribunal al mismo efecto siendo el de más reciente fecha *Rossy* v. *Tribunal Superior*, 80 D.P.R. 729 (1958).

hipoteca a favor del Federal Land Bank hasta la cantidad de $76,000, éste no era admisible en evidencia.

Tiene razón el juez de instancia. No es admisible evidencia extrínseca para variar los términos de un convenio escrito, excepto en los casos enumerados en el propio art. 25 de la Ley de Evidencia, o para demostrar cuál fue la verdadera transacción entre las partes y la causa verdadera.([5]) Pero a poco que analicemos la situación envuelta en el presente caso encontraremos que la prueba ofrecida no cabía dentro de las excepciones apuntadas, pues su propósito, en última instancia, no era demostrar que la causa era distinta a la estipulada en el contrato. El propósito evidente era alterar una de las cláusulas del contrato clara y precisa, aquella que establece "que si apareciera algún otro gravamen sobre la finca rústica, plantaciones y equipo, que por virtud de este documento le han vendido al compareciente don Rafael Torrech Ríos, aparte de la hipoteca que grava la finca a favor del Federal Land Bank of Baltimore, Porto Rico Branch, [la vendedora] se compromete y obliga por la presente a cancelar el mismo sin costo alguno para el comprador."([6])

Estando los intereses hipotecariamente garantizados y constituyendo las contribuciones correspondientes al año 1952-53 un gravamen sobre el inmueble, surge inmediatamente de acuerdo con los claros términos de la cláusula transcrita, la obligación por parte de la vendedora de pagar estas partidas. Habiendo las partes aceptado que el crédito hipotecario estaba reducido a $76,000, cantidad que se reservó el comprador para pagarla en su día, es claro que la vendedora tenía la obligación de pagar cualquier exceso de esa suma que estuviera garantizada hipotecariamente, por constituir un gravamen. ¿Qué otro propósito podía tener la cláusula? ¿Acaso no se comprometió expresamente la vendedora

---

([5]) Véanse los casos citados en el escolio 4.

([6]) El precio y las condiciones de pago se establecieron en cláusula separada.

a pagar cualquier otro gravamen o responsabilidad real que afectare al inmueble vendido en adición al del crédito hipotecario reducido a la suma específica de $76,000? *Menéndez* v. *De la Fuente*, 34 D.P.R. 378 (1925) y *París* v. *Canety*, 73 D.P.R. 403 (1952).

Parece pertinente citar aquí del caso de *Sarria* v. *V. Alvarez y Cía.*, 38 D.P.R. 906, 921, (1928) donde dijimos:

"Base fundamental del artículo 25, de la Ley de Evidencia, es la presunción de que en el convenio consignado en un documento se han incluido, se han fundido todos los propósitos y todas las negociaciones previas, y que las partes han dado cuerpo en ese documento a todo cuanto quisieron y pretendieron al poner en contacto sus voluntades. Y sobre esa base se estableció la regla de que lo consignado en el convenio escrito es la verdad, y toda la verdad; regla que como se ve en el artículo y en la copiosísima jurisprudencia en la materia, tiene sus naturales y ligeras excepciones. Pero. en general, se prohibe la admisión de prueba para variar, enmendar o contradecir lo que una vez fue escrito por acuerdo de las partes, en los casos de acción fundada en aquel documento, y entre las mismas partes que lo suscribieron, o sus causahabientes."

Siendo el propósito de la evidencia rechazada por el tribunal sentenciador alterar una de las cláusulas del contrato escrito, no se cometió el error señalado.

*Se confirmará la sentencia recurrida.*

El Juez Asociado Sr. Serrano Geyls disintió por las razones que oportunamente expresará en una opinión.

El Juez Asociado Sr. Blanco Lugo no intervino.