DILUVINA (conocida por DIVINA) RAMÍREZ VDA. DE RAMÍREZ, demandante y apelada, *v.* NOEMI, ZOE, RICARDO y JORGE JOSÉ RAMÍREZ Y RAMÍREZ, menores de edad; ORISON RAMÍREZ y BELÉN, INÉS, LOLA, MERCEDES, RUFINO y JULIA RAMÍREZ Y VÉLEZ, demandados y apelantes los últimos.

Núm. 9032.—*Sometido:* Enero 18, 1945. *Resuelto:* Enero 18, 1946.

*José Sabater*, abogado del apelante Orison Ramírez; *Oscar Souffront,* abogado de los apelantes de apellidos Ramírez Vélez; *J. Alemañy Sosa*, abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Doña Diluvina Ramírez Marini, viuda del Dr. Ricardo Ramírez Morales, demandó a las personas que constituyen la sucesión de este último, para que se rectifique el concepto de la adquisición de dos inmuebles que aparecen a nombre de la sociedad legal de gananciales que existía entre la demandante y su fenecido esposo, y para que dichos bienes se inscriban como privativos de ella. Alega la demandante que con posterioridad a la muerte de su señor padre, don Severiano Ramírez y Colberg, convino con su señora madre, doña Isolina Marini y Correa, en cederle sus derechos y acciones en la herencia paterna con la condición de que, terminadas las operaciones particionales, su madre le adjudicaría determinados bienes que representasen el valor de su participación cedida; que el 25 de octubre de 1923, por escritura núm. 147, otorgada ante el notario Miguel del Toro Colberg, su señora madre le adjudicó una finca rústica; que aunque esa adjudicación se hizo a título de venta y a nombre de su esposo, el verdadero concepto de la transacción o la causa de la misma fué el pago de la cesión que de sus derechos hereditarios en el patrimonio de su padre, ella hizo a su señora madre; que en el año 1929, después de la muerte de su señora madre, por escritura núm. 264, otorgada el 15 de octubre de 1929 ante el notario Miguel del Toro Colberg, cedió

a su hermano David Ramírez Marini todos sus derechos y acciones en la herencia materna, y en esa misma fecha y ante el mismo notario y en consideración a dicha cesión, su hermano David le adjudicó a su esposo, mediante escritura núm. 266, una finca urbana situada en el pueblo de Cabo Rojo; que aunque en dicha escritura aparece la casa como adjudicada por valor recibido del esposo de la aquí demandante, lo cierto es que tal adjudicación se hizo en pago de la antes mencionada cesión; que por lo tanto las dos adquisiciones fueron hechas a título privativo y por ello la demandante solicita la rectificación de las aludidas escrituras, números 147 y 266, a los fines de que los bienes que en ellas se describen sean inscritos como privativos de ella.

El demandado, Orison Ramírez, hijo natural reconocido del fallecido esposo de la aquí demandante, y los legatarios designados en el testamento de este último, se opusieron, negando todos los hechos esenciales de la demanda y alegando ciertas defensas especiales. Oídas las partes, la Corte de Distrito de Mayagüez, después de declarar sin lugar las defensas especiales interpuestas por los demandados, falló a favor de la demandante y dictó sentencia a su favor. De esa sentencia es que los demandados han apelado, imputando a la corte sentenciadora la comisión de los cuatro errores que a continuación pasamos a considerar.

■ Se imputa como error a la corte inferior el haber declarado sin lugar la defensa especial interpuesta por los demandados en el sentido de que la demanda no aduce hechos suficientes. Hemos leído ésta cuidadosamente y opinamos que la misma contiene todas las alegaciones necesarias. No se ha cometido el error imputado.

■ Se alega que la corte inferior cometió error al admitir prueba oral y un documento privado para cambiar y alterar los efectos de las dos escrituras públicas de adquisición de la finca rústica y de la urbana que fueron inscritas a favor de la sociedad de gananciales constituída por el

finado Dr. Ricardo Ramírez Morales y la demandante Diluvina Ramírez.

Los bienes objeto de este litigio se presumen gananciales por haber sido adquiridos por el esposo de la demandante mediante escrituras de compraventa en las que no se consignó que los mismos eran privativos de la esposa. Para destruir esa presunción se requiere prueba fehaciente y auténtica de que dichos bienes son privativos. En apoyo de su demanda, la demandante ofreció, además de las escrituras de compraventa arriba mencionadas, prueba documental y testifical. Los demandados, basándose en las disposiciones del art. 25 de la Ley de Evidencia que declara inadmisible la evidencia extrínseca en relación con el contenido de un documento, objetaron ésa prueba. La corte inferior, contra la objeción de los demandados, la admitió y la consideró suficiente para destruir la presunción de gananciales que existía sobre los inmuebles. Los apelantes imputan como error de la corte sentenciadora la admisión de esa prueba extrínseca. Estudiado el punto en cuestión, nuestro criterio es contrario al de los apelantes, pues la regla que excluye evidencia extrínseca para contradecir o variar los términos de un documento escrito no impide que se presente evidencia tendente a demostrar la verdadera naturaleza de la transacción celebrada. En *Nieto* v. *Torres*, 56 D. P.R. 154, esta Corte, por voz de su Juez Asociado Sr. De Jesús, dijo a la página 157, citando a 2 Jones *on Evidence in Civil Cases*, 4a. ed. (1938), pág. 951, sec. 446:

" .... La corte va más allá de los términos del documento para penetrar en la transacción realmente celebrada, y cuando se demuestra que la transacción es una garantía y no una venta, dará efecto al contrato realmente celebrado por las partes. Como la equidad, a base de la cual actúa la corte en tales casos, va al carácter verdadero de la transacción, cualquier evidencia escrita u oral tendente a demostrar la transacción, es admisible. La regla que excluye evidencia oral para contradecir o variar un documento escrito se refiere *al lenguaje usado por las partes*. Este no puede ser restringido o variado *en su signifi-*

548

*cado* natural, sino que debe. hablar por sí mismo. La regla *no prohibe una investigación en cuanto al propósito* de las partes al otorgar y recibir el documento. . . . (Bastardillas nuestras.)

Esta regla no puede ser usada por las cortes para suprimir la verdad acerca de una transacción ni para impedir que se demuestre que un convenio escrito es meramente una simulación. Véase: *Ochoteco v. Córdova,* 47 D.P.R. 554; *Morales v. Franco,* 44 D.P.R. 66,([1]) y *Puig v. Sotomayor,* 55 D. P.R. 260, en donde el Sr. Juez Presidente Del Toro dijo lo siguiente:

"Solemnes son las escrituras públicas, pero no por conservar incólume el principio debe quedar consagrado como verdadero lo que en realidad no lo es. Justas y tendentes a establecer el orden, a afirmar el crédito y a robustecer la confianza tan necesarios para el debido desarrollo de las sociedades, son los preceptos de ley invocados, pero esos mismos preceptos contienen excepciones cuyo alcance ha fijado la jurisprudencia a fin de permitir que la luz se haga cuando sea necesario impedir que operen en la realidad de modo injusto. Y en la excepción está este caso comprendido.

"No deben alentarse las simulaciones. La verdad es el camino. La experiencia demuestra cuán caros se pagan los desvíos de esa ruta central que facilita y afianza todas las transacciones, pero muchas veces de buena fe, por una mal entendida bondad hacia familiares y amigos, por el deseo de poner a salvo intereses de personas débiles o por otros motivos más o menos explicables dentro de un campo de acción compatible en cierto modo con la honradez y la

([1]) En *Nicorelli v. E. López & Cía,* 26 D.P.R. 55, esta Corte resolvió que la regla contenida en el artículo 25 de la Ley de Evidencia sólo es aplicable a controversias entre las partes que firmaron el documento, sus copartícipes o sus herederos. En el presente caso, la controversia es entre la esposa y los herederos de una de las partes originales en el contrato. ¿Tiene la esposa la condición de copartícipe en un contrato celebrado por el esposo, por virtud del cual la sociedad de gananciales adquiere determinados bienes? Considerada como tal, la controversia es entre un copartícipe (la esposa) y los herederos del esposo fallecido, y en ese caso, de acuerdo con lo resuelto en *Nicorelli,* supra, es de aplicación la regla. Pero la evidencia objetada se admite a base de lo resuelto en *Nieto v. Torres,* supra. Ahora, si la esposa no puede ser considerada como copartícipe, habiendo en la controversia un tercero (la esposa) ajeno al contrato celebrado, no es de aplicación la regla que excluye la evidencia extrínseca en relación con un documento escrito y, por lo tanto, la evidencia objetada sería igualmente admisible.

verdad última, se realizan actos simulados que no debe permitirse que tengan luego consecuencias tales que resulten opresivas. El castigo debe ser proporcionado a la falta y bastante castigo se recibe en esos casos con las incertidumbres y los trastornos de un pleito.''

Se alega que la corte inferior erró al declarar sin lugar la defensa de que la acción ejercitada se ha extinguido por haber transcurrido más de diez años desde que se otorgaron las escrituras a que se refiere la demanda hasta la radicación de esta última, a tenor con lo dispuesto en los artículos 1830, 1832 y 1857 del Código Civil. Veamos.

El art. 1830 del Código Civil determina los efectos generales de la prescripción y el 1832 especifica que la prescripción opera contra toda clase de personas. Ninguno de los dos fija término de prescripción extintiva a la acción que nos ocupa. En cuanto al citado art. 1857, éste dispone que:

''El dominio y los demás derechos reales sobre bienes inmuebles se prescriben por la posesión durante diez años entre presentes y veinte entre ausentes, con buena fe y justo título.''

Mal puede predicarse la contención de prescripción extintiva sobre un artículo que específicamente se refiere a prescripción adquisitiva o usucapión. En el título décimo-octavo del libro IV del Código Civil, bajo la rúbrica ''De la Prescripción'' se han reunido dos instituciones que, aun cuando tienen reglas comunes, son sin embargo, muy diferentes: la prescripción liberatoria o extintiva y la prescripción adquisitiva o usucapión. No se debe, pues, bajo ningún concepto, utilizar el término prescriptivo de una para aplicarlo a la otra, pues ello es erróneo.

Asumiremos, no obstante, que los apelantes lo que han querido sostener es que su causante ha obtenido el dominio de dichos inmuebles por la posesión ordinaria de diez años y que, en su consecuencia, la demandante no puede perturbarle en su derecho adquirido. Pero aún esta contención carece de méritos, pues para adquirir por prescripción ordinaria se requiere, entre otras cosas, justo título y buena fe.

La demandante ofreció prueba documental y testifical sobre la verdadera naturaleza de la transacción habida, prueba a la que la corte inferior dió crédito. Luego si, a base de esa prueba, se demostró que el causante de los apelantes meramente prestó su nombre en el otorgamiento de las escrituras, no puede sostenerse en forma alguna que tenía un justo título y buena fe. Además, de los hechos, así aceptados, resulta evidente que no ha habido *animus domini,* requisito *sine qua non* para que la posesión pueda servir de base para la prescripción adquisitiva del dominio. Véase a ese efecto el art. 1841 del Código Civil que requiere que la posesión sea en concepto de dueño y el art. 1842 del mismo cuerpo legal que dispone que no aprovechan para la prescripción los actos de carácter posesorio ejecutados en virtud de licencia o por mera tolerancia del dueño.

Se imputa a la corte inferior haber errado al no declarar que la acción ejercitada está extinguida, de acuerdo con el art. 1253 del Código Civil, por haber transcurrido más de cuatro años desde que se otorgaron las escrituras hasta la presentación de la demanda en este caso.

La acción que ejercita la demandante no es la de nulidad de las escrituras por virtud de las cuales el difunto Ricardo Ramírez Morales aparece adquiriendo en su propio nombre bienes que en realidad pertenecían a su esposa, por haberles sido traspasados o adjudicados en pago de las cesiones hechas por ella de sus participaciones en las herencias paterna y materna. El propósito de la acción es el de demostrar, como lo demostró la prueba practicada y creída por la corte inferior, que los bienes inmuebles envueltos en esta controversia fueron adjudicados a la demandante en pago de sus participaciones en la herencia de su padre Don Severiano Ramírez Colberg y de su señora madre doña Isolina Marini y Correa; que el esposo de la demandante no pagó precio alguno por el traspaso de las propiedades; y que los traspasos de la finca de 126.66 cuerdas y de la finca urbana ra-

dicada en Cabo Rojo se hicieron a nombre del esposo de la demandante, a petición de ésta. La demandante declaró: "Yo misma fuí quien supliqué que las pusieran a nombre de él; siendo él mi esposo, de toda mi confianza, me creí que estaban mejor puestas a nombre de él". Esta declaración fué corroborada por las de los testigos David Ramírez y Reynaldo Ramírez, quienes afirmaron que el difunto Ricardo Ramírez Morales no pagó nada por las fincas; y que éstas aparecen a su nombre, por haberlo querido así la demandante.

 Creemos de aplicación a los hechos de este caso la doctrina sentada por este Tribunal en *Porrata* v. *Fajardo Sugar Co.*, 57 D.P.R. 628 y en *Ruiz* v. *Ruiz*, 61 D.P.R. 823 (²) En este último caso, un padre compró una finca y la puso a nombre de su hija mayor, conviniendo con ella en que a medida que sus hermanos—entonces menores de edad—fuesen llegando a su mayoridad, ella les iría pasando a cada uno de ellos un condominio de una quinta parte de la finca. Habiéndose negado la tenedora del título a entregar los condominios que le reclamaron sus hermanos, radicaron éstos una demanda sobre "reivindicación de condominios y pago de frutos". Al confirmar la sentencia a favor de los hermanos demandantes, nos apoyamos en fundamentos distintos a los expuestos por la corte inferior, diciendo:

"El hecho de que los demandantes hayan titulado su acción 'reivindicación de condominios y pago de frutos' no nos impide resolver que en este caso existe un fideicomiso constructivo, resultando como resulta que dicho remedio es perfectamente compatible con las alegaciones y la prueba. Así lo hicimos en el caso de *Porrata* v. *Fajardo Sugar Co.*, 57 D.P.R. 628, 632 y 643, donde ni en el título de la acción ni en la súplica de la demanda se mencionaba el fideicomiso constructivo y sin embargo esta corte, para hacer justicia entre las partes, declaró la existencia de dicho fideicomiso."

(²) Véanse: *Foreman* v. *Foreman*, (N.Y. 1929) 167 N.E. 428; 2 *Restatement of the Law, Trusts*, págs. 140 *et seq.*; 3 Bogert *on Trusts*, pág. 1590.

La declaración de que en este caso existe un fideicomiso constructivo, o sea que Ricardo Ramírez Morales aceptó y poseyó el título sobre las dos fincas en calidad de fiduciario (*trustee*), para beneficio de su esposa, la demandante, como fideicomisaria, es perfectamente compatible con las alegaciones y la prueba. Al ocurrir el fallecimiento de su esposo, la demandante adquirió el derecho a reclamar como de su exclusiva propiedad, los bienes adquiridos por ella como herencia de sus padres y que ella "por delicadeza" había hecho poner a nombre de su esposo. Si sostuviésemos lo contrario, o sea que los bienes adquiridos por Ricardo Ramírez pertenecían a la sociedad de gananciales entre él y la demandante, estaríamos sancionando el injusto enriquecimiento de los demandados a expensas de la demandante, quien, de acuerdo con la prueba, tiene derecho a los bienes que reclama por haberlos adquirido por herencia de sus padres.

*Aunque por fundamentos distintos a los expuestos por la corte inferior, procede confirmar la sentencia apelada.*

El Juez Asociado Sr. Córdova no intervino.